UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

RAILWORKS TRANSIT, INC.,

                Plaintiff,

   - against -

BUILDING, CONCRETE, EXCAVATING &
COMMON LABORERS UNION LOCAL NO. 731
OF GREATER NEW YORK, LONG ISLAND AND
VICINITY OF THE LABORERS' INTERNATIONAL
UNION OF NORTH AMERICA, AFL-CIO,

                Defendant.
------------------------------------x

Judge Gardephe

Civil Action No. 08 CV 7142

COMPLAINT



RailWorks Transit, Inc. ("RailWorks Transit"), by its attorneys, Murtagh, Cohen & Byrne, for its complaint against Building, Concrete Excavating & Common Laborers Union Local No. 731 of Greater New York, Long Island and Vicinity of the Laborers' International Union of North America, AFL-CIO ("Local 731"), alleges:

JURISDICTION

1. This action is brought pursuant to §301 of the Labor Management Relations Act, 29 U.S.C. §185, which authorizes "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce…in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties," and pursuant to 28 U.S.C. §1331, 28 U.S.C. §2201, and the Federal Arbitration Act, 9 U.S.C. §1, et, seq.

2. Plaintiff RailWorks Transit is a construction contractor and employer in an industry affecting commerce within the meaning of the National Labor Relations Act, 29 U.S.C. §153, et seq. By virtue of their common parent company, RailWorks Transit Systems, Inc., RailWorks Transit is an affiliate of L. K. Comstock & Company, Inc. ("LKC"), an electrical construction contractor which is also an employer in an industry affecting commerce within the meaning of the National Labor Relations Act, 29 U.S.C. §153, et seq.

3. Defendant Building, Concrete, Excavating & Common Laborers Union Local No. 731 of Greater New York, Long Island and Vicinity of the Laborers' International Union of North America, AFL-CIO is a labor organization within the meaning of the National Labor Relations Act, 29 U.S.C. §151, et seq.

4. By virtue of its membership in the General Contractors Association ("GCA"), a multiemployer trade association which conducts collective bargaining negotiations with various construction labor unions, RailWorks Transit is party to a collective bargaining agreement with Local 731 dated July 12, 2007, covering the period July 1, 2006 through June 30, 2012 (the "Collective Bargaining Agreement" or "CBA").

5. By virtue of its membership in the New York Electrical Contractors Association, Inc. ("NYECA"), a multiemployer trade association of electrical contractors, LKC has a collective bargaining agreement with Local Union No. 3, International Brotherhood of Electrical Workers, AFL-CIO ("Local 3"), another labor organization within the meaning of the National Labor Relations Act, 29 U.S.C. §151, et seq.

<u>AS AND FOR A FIRST CLAIM FOR RELIEF</u>

6. This matter arises out of the performance of New York City Transit Authority

("NYCTA") Contract S-32725, "Signal System Modernization, East 180th Street Yard, White Plains Road Line, IRT, Borough of the Bronx" (the "E. 180th Street Yard Project"). LKC is the prime contractor on that job, and awarded a subcontract to RailWorks Transit calling for performance by RailWorks Transit of certain track work. LKC did not subcontract to RailWorks Transit the installation of certain "splice bars" that were required to be installed upon the "third" or contact rail to comply with NYCTA Contract S-32725. Instead, LKC retained the installation of the splice bars within its own scope of work, to be performed by electricians employed by LKC.

7. On NYCTA projects similar to the E. 180th Street Yard Project, electricians employed by LKC and represented by Local 3 have traditionally performed all necessary electrical connections, including the installation of splice bars and similar devices or application of techniques at the joints of sections of the "third" or contact rail to complete the electrical circuit which permits operation of subway trains. Prior to the use of aluminum splice bars, electricians employed by LKC and represented by Local 3 would "stick weld" comparable bars, of different composition, or use a mold pursuant to a process called "Cadwelding" to perform the same electrical splicing function. After electricians have completed the required splicing of third rail segments, they must perform the testing required by the NYCTA specifications to ensure an acceptable electrical resistance level had been achieved.

8. By letter dated July 11, 2008, Local 731 charged RailWorks Transit with "violating the terms and conditions of Laborers Local 731's collective bargaining agreement ('cba') by using electricians to install fishplates on the rail" at the E. 180th Street Yard Project. Local 731's letter continued:

3

> "By copy of this letter to Arbitrator Stephen O'Beirne, we are requesting that this matter be scheduled for arbitration as soon as possible. We are demanding reimbursement of all lost wages and fringe benefits under the terms and conditions of our collective bargaining agreement ('cba'). You have twenty (20) days from the date of this letter in which to file [an application for] a stay of arbitration."

9. By letter dated July 24, 2008, counsel for Local 731 confirmed the parties' agreement to extend the "stay" provision in Article IV, Section 2 (b) of the CBA for another twenty (20) days. Accordingly, RailWorks Transit's time to make an application to stay the arbitration demanded by Local 731, without loss of rights, has been extended through August 13, 2008.

10. Although its grievance plainly constitutes a jurisdictional dispute over the assignment of the third rail splicing work on the E. 180th Street Yard Project, Local 731 is now attempting to proceed under the CBA's procedures as though its grievance related to something other than a jurisdictional dispute. Its demand for arbitration ignores and bypasses Article V of the CBA, captioned "Jurisdictional Disputes", the clause which specifically addresses such disputes between two unions asserting conflicting rights to perform the same work. Instead, by tactics which include filing an unfounded grievance against RailWorks Transit, a party which does not control the assignment of the third rail splicing work in question and does not have any dispute with Local 731 or its members, Local 731 is improperly engaging in secondary activity prohibited by the National Labor Relations Act, 29 U.S.C. 153, et seq.

11. Article V of the CBA specifically and solely addresses "Jurisdictional Disputes", prescribing their resolution by a joint submission of the disputing trade unions to the "Heavy Construction Industry Jurisdictional Panel", a body administered by the GCA which is intended to resolve jurisdictional disputes. There is no other clause of the CBA that mentions or authorizes determination of "jurisdictional rights" or jurisdictional disputes by any other mechanism.

4

12. Article V properly recognizes that the only way to resolve a jurisdictional dispute is to bring the disputing trades before the same dispute resolution forum. Article V turns out to be a "dead end" in this case, however, because Local 3 does not participate in the "Heavy Construction Industry Jurisdictional Panel" administered by the GCA, just as, by virtue of their resignation from the New York Building & Construction Trades Council, Local 731 does not participate in the "New York Plan for the Settlement of Jurisdictional Disputes" administered by the Building Trades Employers' Association ("BTEA"), the method to resolve jurisdictional disputes specified by Local 3's collective bargaining agreement. Since, despite the verbiage of the Local 731 CBA, the disputing trades do not consent to appear in the same forum, there is no "agreement to arbitrate" this jurisdictional dispute which, by default, must be resolved by the NLRB.

13. Until the assignment of work issue is determined in its favor, and its members have actually performed third rail splicing for which they have not been paid, Local 731 has no legitimate claim for nonpayment of wages and fringe benefits. The CBA does not call for payment of wages and fringe benefits to RailWorks Transit's laborers for work they never performed since this work was retained and performed by LKC, the entity which held the prime contract with NYCTA.

14. The only arbitration with respect to "Jurisdictional Disputes" to which RailWorks Transit has consented under the CBA is arbitration before the "Heavy Construction Industry Jurisdictional Panel for the Settlement of Jurisdictional Disputes", pursuant to Article V. Since that species of arbitration is unavailable, a valid agreement was not made or has not been complied with. Local 731 has no right to unilaterally demand "cy pres" arbitration under Article IV, Section 2 of the CBA as its next best choice, since the grievance procedures therein do not apply

to jurisdictional disputes, which are separately addressed in Article V. The Article IV grievance procedures would apply to disputes between RailWorks Transit and Local 731 or its members. They do not apply to the work assignment dispute at hand, which is between Local 731 and Local 3.

15. Moreover, any such one-sided arbitration as demanded by Local 731 before Arbitrator O'Beirne, to which Local 3 would not even be a party, would be a farce. Any determination that the third rail splicing should have been performed by Local 731 laborers, rather than Local 3 electricians, would be entitled to no weight whatsoever in the absence of Local 3. It could only unfairly saddle RailWorks Transit with monetary penalties for a work assignment decision that it never made.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for an order of this Court declaring the parties' rights and legal relations, enjoining the arbitration demanded by Local 731, vacating the demand therefor, and awarding such other and further relief as to the Court seems just and proper.

Dated: Rockville Centre, New York
       August 11, 2008

MURTAGH, COHEN & BYRNE

By: _____
    Edward T. Byrne (EB-8520)
    A Member of the Firm
    Office & P. O. Address
    100 North Park Avenue
    Rockville Centre, NY 11570
    (516) 766-3200